UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

CAROL LEWIS,

        Plaintiff,

    v.                                 Case 1:15-cv-13530-NMG

DON WRIGHT,
*in his official capacity as acting secretary, United States*
*Department of Health and Human Services, 615-F*
*Hubert H. Humphrey Building 200 Independence*
*Avenue, SW Washington, DC 20201,*
                        Defendant.

_____

**LEAVE TO FILE GRANTED ON OCTOBER 11, 2017**
**REPLY IN SUPPORT OF PLAINTIFF'S FIRST MOTION TO ALTER OR AMEND**
**JUDGMENT AND IN OPPOSITION OF DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S FIRST MOTION TO ALTER OR AMEND JUDGMENT**

_____

Ms. Lewis' motion should be granted and the order of dismissal withdrawn.

Before addressing any of the issues, it is worth remembering that FED.R.CIV.P. 52 and 59 "allow a court to correct its own errors and avoid unnecessary appellate procedures." *See, e.g., Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 190 (1st Cir. 2004). Further, it appears to be undisputed that, if necessary, this Court's order of dismissal will be reviewed *de novo* on appeal. *See ACLU of Mass. V. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013). Thus, if the Court believes that its decision may have been in error, the Court should reverse the order and avoid unnecessary appellate practice.

As always, Ms. Lewis' focus remains on the merits. Accordingly, Ms. Lewis addresses those first before turning to the Secretary's procedural claims.

**I.     This Case Is Not Moot**

In her opening papers, Ms. Lewis showed that:

1) the Court's Memorandum and Order of dismissal does not indicate that the Court reviewed the Complaint to determine what relief was sought;

2) Ms. Lewis' Complaint sought, *inter alia*, money in the form of an order that the Secretary cover Ms. Lewis' claims for CGM coverage;

3) the Secretary did not make any effort to meet its burden of showing that it was "impossible for the Court to grant any effectual relief whatever" to Ms. Lewis;

4) the Secretary did not make any effort to meet its burden of showing that it was "absolutely clear" that the denials of Ms. Lewis' coverage claims could not reasonably be expected to recur;

5) the Secretary made no effort to show that the January 2017 CMS Ruling even applied to this case; and

6) the Court's Memorandum and Order of dismissal made no finding that it was impossible for the Court to grant any effective relief and did not determine that the Secretary has met its burdens to show mootness.

As a general matter, unless and until Ms. Lewis receives coverage for her diabetes related expenses, this case will not be moot.

Pages 3-8 contain the Secretary's first effort to examine the relief sought by the Complaint. While flawed, this is the kind of analysis that should come before a dismissal, not after.  Frankly, it is very hard for Ms. Lewis to understand the Secretary's claim that the Complaint does not "seek damages in the form of payment for her past claims."  Response at 5-6.  As Ms. Lewis noted in her opening papers, that is the very thing sought by the First Cause of Action and in the Requested Relief.  Motion at 1, 8-9 (e.g., "… an order that this Court will retain jurisdiction over the claims at issue until the Secretary's payment of the claims at issue has been completed").

This case is the result of the Secretary's refusal to pay $2,842 for coverage for Ms. Lewis' Medtronic CGM for the months of June 2011 and March, June, September, and November 2012 as directed by Congress.  See A.R. 753.  Until those funds are paid (and the Secretary has not even

attempted to show that they have been), this case will not be moot. Simply pretending that the Complaint does not seek that will not make it so.

Likewise, it is very difficult for Ms. Lewis to understand the Secretary's claims regarding declaratory judgments/actions. Response at 4-6. While, as a technical matter, a Complaint of this type seeks injunctive relief (*see Bowen v. Massachusetts*, 487. U.S. 879, 893-901 (1988)), in substance, this is a case about money and the Secretary's refusal to follow the laws passed by Congress. All of the causes of action are directed to obtaining $2,842 that resulted from the Secretary's denial of Ms. Lewis' Medtronic CGM claims. Whether the Medtronic CGM is DME, not precautionary, etc. are all the predicates or defenses to Ms. Lewis' claim for $2,842 and the bases for the Secretary's refusals.[1]

The Complaint does not seek abstract declarations about devices in the past or in the future. Rather, the Complaint seeks $2,842 for Ms. Lewis' Medtronic CGM for the months of June 2011 and March, June, September, and November 2012. Ms. Lewis contends that coverage is owing because the device is DME within the meaning of the statute, covered by an NCD and LCD, and the Secretary's denial was erroneous, arbitrary and capricious, and failed to follow the proper procedures. See Complaint, generally. The Secretary denies these allegations on the grounds that, *inter alia*, the Medtronic CGM is not DME (because it is precautionary), not covered by the NCD or LCD at issue (but is precluded by an Article). See Answer and Administrative Record, generally. Thus, the only "declaring" needed is the underlying facts/conclusions regarding coverage related to the denial of Ms. Lewis' claim for $2,842.

---

[1] While $2,842 for several months coverage may seem small to some, to those of limited means, it most certainly is not. Further, Congress believes that the issue of coverage for medical claims of this type is so important that it has directed courts to take up cases where little more than half that amount is in controversy. 42 U.S.C. § 1395ff(b)(1)(E) (~$1,500 amount in controversy requirement for filing district court action, adjusting for inflation).

In her opening papers, Ms. Lewis demonstrated that the Secretary did not meet his burden of showing that the Complaint was moot.  Further, Ms. Lewis demonstrated that the Secretary did not meet his burden of showing that it was "absolutely clear" that the complained of conduct would not recur with regard to denials of coverage of the Medtronic device (or the Dexcom device, even assuming the device or the CMS Ruling 1682 had any bearing on this case).  In his Response, remarkably, the Secretary seeks to place the burden of proving lack of mootness on Ms. Lewis.  For example, the Secretary claims: "… Plaintiff has failed to point to any instances in which the Secretary has acted contrary to CMS Ruling 1682."  Response at 7, n. 7.  While that Ruling is not even relevant to this case and it is the Secretary's burden to show that it is "absolutely clear" that the conduct will not recur, Ms. Lewis accepts the Secretary's challenge.  Attached, as Exhibit A, are documents from ongoing appeals of denials of Dexcom G5 coverage from February, April, and May 2017.  There, contrary to CMS Ruling 1682, the department contends that a Dexcom G5 is not DME.  Appeals of those denials are currently pending before an ALJ.  Indeed, this exchange simply illustrates the arbitrary and capricious nature of the Secretary's decisions.  *See, e.g.*, Complaint at ¶ 107 ("[T]he Secretary's decision must be set aside because it is ... arbitrary, capricious …").

In short, if appeal is necessary, a reviewing court will have to decide: did the Secretary meet his burden of showing that Ms. Lewis has no continuing interest in the $2,842 Ms. Lewis has been seeking for more than five years, when that money has not been paid, the Secretary has not indicated that it will pay, the Court did not order the Secretary to pay that amount (or any amount), and the Secretary continues to refuse to pay?  On these facts, it would be wasteful of judicial resources and not consistent with the "just, speedy, and inexpensive determination" of this action (FED.R.CI.VP. 1) to force an appellate court to consider that question.

## II.      The Order Is In Error Procedurally

Putting aside the substantive defects, simply on procedural grounds, the Court's order is subject to reversal.  In her opening papers, Ms. Lewis showed that:

1) the Secretary's original motion to affirm was converted into a motion for summary judgment on one ground;

2) after the Secretary's Reply, the Court considered the Reply as a new motion to dismiss;

3) the alleged jurisdictional issues/facts on which dismissal was premised and the merits are intertwined and the issues/facts are disputed;

4) the Court appears to have relied on matters outside of the pleadings in deciding dismissal, thereby converting any motion to dismiss into a motion for summary judgment on another ground;

5) the Court did not determine that there were no genuine issues of material fact regarding the alleged jurisdictional issues/facts; and

6) the Court did not give reasonable opportunity/notice to Ms. Lewis of the Court's intention to convert a motion to dismiss into a motion for summary judgment.

Thus, Ms. Lewis showed that the order of dismissal suffered from a number of reversible defects.

In attempting to defend the order, the Secretary claims: "… the Court did not convert HHS' Motion to Affirm to a motion for summary judgment."  Opp. at 8.  That claim must come as a surprise to the Court as the Court's Memorandum & Order states: "Pending before the Court are the parties' cross-motions for summary judgment …"; "… defendant's motion for summary judgment will be denied as moot …"; and "defendant's motion for summary judgment (Docket No. 51) is **DENIED as moot**[.]"  Order at 1 and 5 (emphasis in original) (citing defendant's motion to affirm).

Further, the Secretary's Response actually appears to confuse the two motions for summary judgment at issue (an understandable outcome of the failure to provide proper notice and follow the procedural requirements).  The *first* motion for summary judgment was the Secretary's converted Motion to Affirm.  Dkt. #51.  The *second* motion for summary judgment was the Secretary's Reply (Dkt. #57), that was then converted into a motion to dismiss, that was then converted into a second

motion for summary judgment (because it appears to rely on matters outside the pleadings that are intertwined with the merits). The Court's conversion of the Reply into a motion to dismiss/summary judgment without reasonable opportunity/notice to Ms. Lewis violates, at least, FED.R.CIV.P. 12(d).

The Secretary's Response does not challenge the fact that the alleged jurisdictional facts and the merits are intertwined and in dispute. Likewise, the Secretary does not challenge the fact that the Court relied on matters outside of the pleadings in making its decision. Likewise, the Secretary does not contend that the Court determined that there was no genuine issue of material fact on the alleged jurisdictional/merits facts. Nor does the Secretary contend that, in converting an alleged motion to dismiss into a motion for summary judgment, the Court provided Ms. Lewis reasonable opportunity/notice of the intended conversion. Standing alone, those defects would merit reversal.

The Secretary does assert that Ms. Lewis should have presented the arguments in the motion to alter/amend before the order was entered. Response at 2. That charge only proves Ms. Lewis' point. Ms. Lewis was not given a reasonable opportunity/notice that the Court was going to treat the Reply as a motion to dismiss and further treat it as a motion for summary judgment. Indeed, treating a reply as a new motion does not comply with L.R. 7.1(a)(2) (meet and confer requirement) or 7.1(b)(1) (form of motions). As noted in Ms. Lewis' opening papers, none of the procedural requirements for filing a motion or dealing with converting motions to dismiss to motions for summary judgment were complied with.

In a footnote, the Secretary contends that, in response to the Secretary's Reply, Ms. Lewis should have sought leave to file a sur-reply. Response at 8, n. 9. That notion defies common sense. First, Ms. Lewis would have had to guess whether this Court would consider the Reply as a new motion to dismiss (in contravention of L.R. 7.1(a)(2) and (b)(1)). Then, Ms. Lewis would have to

guess that this Court would convert the newly declared motion to dismiss into a motion for summary judgment. Further, all of this guessing would have to be done with none of the applicable legal standards being followed/offered (e.g., relying on documents not submitted to the Court, no showing that it was impossible to grant any relief, no showing that it was "absolutely clear" that the conduct would not recur, etc.). Simply put, neither the Local Rules nor the Federal Rules of Civil Procedure require clairvoyance in order to prevent an erroneous dismissal.

## III.   CONCLUSION

Consistent with the policy goals of FED.R.CIV.P. 52 and 59(a)/(e), unnecessary appellate practice can be avoided if the judgment entered August 22, 2017 is withdrawn and the errors corrected. Ms. Lewis respectfully requests that this motion be granted.

Dated: October 10, 2017                    Respectfully submitted,
                                           CAROL LEWIS, By her attorneys,
                                           */s/ Laurie J. Bejoian*
                                           LAURIE J. BEJOIAN BBO No. 545312
                                           325B Great Road
                                           Littleton, MA 01460
                                           978-486-9145
                                           ljblaw.ljbejoian@gmail.com

                                           OF COUNSEL
                                           DEBRA M. PARRISH
                                           PARRISH LAW OFFICES
                                           788 Washington Road
                                           Pittsburgh, PA 15228
                                           412-561-6250
                                           debbie@dparrishlaw.com