UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

CAROL LEWIS,

               Plaintiff,

    v.                                   Case 1:15-cv-13530-NMG

ALEX AZAR,
Secretary of the U.S. Department of Health
and Social Services,

               Defendant.

_____

## MS. LEWIS' MOTION FOR FEES AND COSTS

_____

Plaintiff, Carol Lewis, respectfully files this motion for an Order compelling the Secretary to reimburse Ms. Lewis her reasonable attorneys' fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b) and (d).

This is exactly the kind of case for which an EAJA award is justified.  Since March 2012, the Secretary has denied Ms. Lewis' claims on the grounds that a continuous glucose monitor (CGM) is not "primarily and customarily used for a medical purpose."  On its face, that position was and is non-sensical.

The Secretary maintained that position for more than six years though:

1)  more than 40 Administrative Law Judges (ALJs) issued more than 55 decisions telling the Secretary his position was not well founded;

2)  multiple ALJs told the Secretary his position was not correct with respect to Ms. Lewis, specifically;

3)  another district court ruled that the Secretary's position was arbitrary and capricious, and that decision had become final;

4)  another district court told the Secretary his position was "head scratching";

5) the Secretary's own Civil Remedies Division told the Secretary his position did not meet the reasonableness standard.

Ms. Lewis should never have had to litigate this issue.

In addition to the baselessness of the underlying substantive position, the Secretary repeatedly acted with clear disregard for his legal duties and engaged in conduct constituting bad faith after the litigation began.  For example, although the statutes require the Secretary to issue decisions from the MAC within 90 days, the Secretary did not issue a decision on Ms. Lewis' appeal for over 550 days.  Likewise, in this litigation, the Secretary baselessly argued that the case was moot based on documents not provided to the Court.  Further, the Secretary repeatedly refused to comply with this Court's Local Rules in response to Ms. Lewis' efforts to narrow issues, reduce expense, and avoid delay.  The result of this conduct was a dramatic increase in the expense of the litigation and additional delay of more than six months.

Ms. Lewis should be awarded her reasonable attorneys' fees.

## I.    BACKGROUND

### A.    Factual Background

Carol Lewis is a 72-year old mother of three.  Starting from a push cart in Faneuil Hall, Ms. Lewis has run a small business for the last 40 years, designing and selling women's apparel.  In addition to the business that she operates with her daughter, Ms. Lewis volunteers with her church and at the local senior center.  First diagnosed with Type I diabetes in 1985, Ms. Lewis is among the longest living brittle diabetics in the United States and one of the first to use CGM equipment.

### B.   Procedural Background

#### 1.   Activity Before the Department

##### (a)   The Claims That Led To M-14-1822

Ms. Lewis received CGM supplies on June 6, 2011, and March 13 and 23, June 18, and September 17, 2012.  Claims for coverage were initially denied on May 11, August 3, and October 26, 2012.  AR 764-768.  Ms. Lewis sought redetermination and that was rejected on January 31, 2013, on the ground that the CGM and CGM supplies are "precautionary."  AR 753.  Ms. Lewis sought reconsideration and on May 10, 2013 that was denied, again, on the grounds that a CGM and CGM supplies are "precautionary."  AR 682.

On February 14, 2014, ALJ Zatopa denied Ms. Lewis' claims.  In particular, relying on the Article and related LCD, ALJ Zatopa held that Medicare coverage was precluded on the grounds that a CGM was "precautionary."  Judge Zatopa's decision was founded on the Secretary's claim that an Article (which had not been subject to notice and comment) was entitled to the same deference as an LCD (which is subject to notice and comment) and that "precautionary" had some meaning.  AR 236-237.  On March 18, 2014, Ms. Lewis sought MAC review.  AR 213-216. Because no decision had issued within the required 90 days, Ms. Lewis filed a request for escalation on September 14, 2015.  AR 14-15.  Regulations require the Secretary to respond to requests for escalation within 5 days.  42 C.F.R. §405.1132(a)(1)-(2).   However, the Secretary still did not respond.  Finally, more than 550 days after filing, on September 25, 2015, the MAC denied Ms. Lewis' appeal.  AR 1-13.  Again, the MAC gave deference to the Article (treating it as an LCD) and denied Ms. Lewis' claim on the grounds that a CGM was "precautionary."  AR 10.

##### (b)   LCD/LCA Challenge

Because the ALJ decision accorded substantial deference to the Article as a basis for excluding the CGM from coverage, in effect, the ALJ treated the Article as an LCD.  Review of

exclusions based on an LCD have different standards than those based directly on the statute (or deviation from an LCD).

Accordingly, to preclude reliance on the Article as a defense before the MAC for her continuing claims that were wending their way through the appeal process (and ultimately in this litigation), Ms. Lewis brought an LCD challenge in the form of C-15-1021 filed on December 26, 2015.[1]  The decision in C-15-1021 held that the Article was not an LCD and, therefore, the Article was not entitled to deference.  Accordingly, the Secretary was not able to rely on deference to the Article for Ms. Lewis' CGM claims and as a defense in this litigation.[2]

### 2.      This Litigation

#### (a)      Basic Pleadings

Ms. Lewis filed this action on October 8, 2015.  The Secretary responded by filing a motion to dismiss every cause of action on February 1, 2016.  On September 4, 2016, Magistrate Bowler issued a Report and Recommendations rejecting the Secretary's motion except as to the Eight Cause of Action.  Dkt. # 37.  That cause was dismissed because the mandamus relief sought of ordering the Secretary to issue rulings complying with the timing requirements of the statutes was rendered moot when the Secretary belatedly issued a ruling in this case.  This Court adopted Magistrate Bowler's Report and Recommendations.  Dkt. # 41.

Finally, more than a year after this case was filed, the Secretary filed an Answer on November 18, 2016.  Dkt. # 44.  Competing motions for summary judgment were filed in January and March 2017.  In his motion to affirm, the Secretary argued, inter alia, "… the CGM's purpose is not primarily or customarily medical or therapeutic."  See Dkt. # 52 at 15, 18.  In a reply filed in

---

[1] *In re: Local Coverage Determination Complaint: Glucose Monitors (L11530/L33822 and Local Coverage Articles A33614/A52464)*, DAB No. CR4596 (2016).  2016 WL 2851236.

[2] That issue was also litigated in *Whitcomb v. Burwell*, Case No. 13-cv-990 (E.D. Wisc. May 26, 2015) (Duffin, J.), where the Court again found that reliance/deference to the Article was improper.  2015 WL 3397697 at 4-5.

April 2017, the Secretary offered for the first time that the case was moot as a result of Ms. Lewis'

switch to the Dexcom G5 device during the litigation and in light of CMS Ruling 1682R and an

FDA paper.  Dkt. # 57.  In making this argument to the Court, the Secretary did not provide the

Court a copy of the papers referred to or reveal that, by its own terms, the Ruling was prospective

only, and simply could not apply to the claims in this case.  Relying on the Secretary's

representations, the Court issued an Order dismissing this case as moot on August 18, 2017.  Dkt. #

58.

**(b)**      **Motion to Alter or Amend**

Ms. Lewis immediately appreciated that the Court's Order dismissing this case was in error

because the Court was misled by the Secretary's statements in the summary judgment reply brief

and was not given the underlying documents indicating that CMS Ruling 1682R was prospective

only.  Local Rule 7.1(a)(2) provides: "No motion shall be filed unless counsel certify that they have

conferred and have attempted in good faith to resolve or narrow the issue."  Accordingly, having

determined that a motion to alter/amend was required, starting on September 12, 2017, counsel for

Ms. Lewis repeatedly attempted to meet and confer with the Secretary's counsel, Anita Johnson.

Ms. Johnson refused to confer or make any effort to narrow the issues.  In response to the repeated

requests, Ms. Johnson wrote:

> Mr. Pistorino, what you need to know at this point is the government's position on
> your motion.  The government's position is that it opposes the motion.  If you have
> any information that you have not conveyed and that you wish to convey at this
> point, please feel free to email me that information.  I don't know how to be any
> clearer!

> Anita Johnson

Exhibit E.  As a result, Ms. Lewis was forced to incur the full costs of drafting a motion and the

Court was forced to consider each issue/sub-issue.  Further, Ms. Lewis was unable to even know the

bases for the Secretary's opposition to the motion until the Secretary filed his opposition.  In

addition to the increased costs to Ms. Lewis and burden on the Court, the result was more than six months additional delay in resolving this case.

The Secretary opposed the motion to alter/amend arguing, *inter alia*, that the Complaint did not seek past funds expended (although the Secretary's own listing of the relief sought revealed that it did).  On April 5, 2018, this Court issued an Order granting the "extraordinary relief" of reconsidering the earlier decision, withdrawing the prior dismissal, and granting summary judgment entirely in Ms. Lewis' favor.

### (c)      Motion for Fees Under EAJA

As with the motion to alter/amend the judgment, Ms. Lewis sought to meet and confer on the present motion for fees in compliance with L.R. 7.1(a)(2).  On Thursday, April 26, 2018, counsel for Ms. Lewis had a teleconference with Ms. Johnson.  Ms. Johnson agreed that Ms. Lewis was the "prevailing party" but otherwise refused to discuss any of the issues related to the motion or make any effort to "narrow the issues."  For example, assuming fees were awarded, Ms. Lewis' counsel sought to determine whether a COLA adjustment was disputed.  Ms. Johnson refused to respond.  Accordingly, again, Ms. Lewis is forced to file a motion without knowing which parts are disputed, incurring the expense of briefing issues that might have been narrowed, and the Court is forced to bear the burden of briefing on issues that might have been agreed.

### C.           Legal Background

The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, has two relevant provisions, paragraph (d) and (b).  These provisions are separate and distinct and "stand completely apart." *See Kerin v. U.S.P.S.*, 218 F.3d 185, 189 (2nd Cir. 2000) (*citing Wells v. Bowen*, 855 F.2d 37, 46 (2nd Cir. 1988).

### 1.       Paragraph (d) Fees

28 U.S.C. § 2412(d)(1)(A)) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

"The EAJA was enacted to decrease the chance that 'certain individuals … may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights.'" *See, e.g., Green v. Bowen*, 877 F.2d 204, 206 (2nd Cir. 1989).  A parallel objective of EAJA is to deter the government from litigating unreasonable positions by forcing the government to bear the cost of the resulting attorneys' fees. *See, e.g., Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991); *Berman v. Schweiker*, 713 F.2d 1290, 1295-6 (7th Cir. 1983).

Under the statute, eligibility for a fee award requires: 1) that the claimant is the "prevailing party"; 2) that the Government's position was not substantially justified; and 3) that no "special circumstances" make a fee award unjust. *See, e.g., Gomez-Beleno v. Holder*, 644 F.3d 139, 144 (2nd Cir. 2011).  As defined in the statute, the "position of the United States" includes not only the position advanced in the litigation, but also the acts or omissions by an agency giving rise to the litigation.  28 U.S.C. § 2412(d)(2)(D).

A party is the "prevailing party" if he has been "awarded some relief by the court" that amounts to a court-ordered "change in the legal relationship between the parties." *See Buckhannon Board and Care Home Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603-4 (2001).

After the movant shows that it was the "prevailing party", the government bears the burden of showing that its position was substantially justified.  "Substantially justified" means

"justified to a degree that could satisfy a reasonable person." *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Further, "substantially justified" means "more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve." *Id.* at 566. To make that showing, the government must make a "strong showing" that its position has "a reasonable basis both in law and fact." *Id.* "[T]he Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not 'substantially justified.'" *United States v. $19,000 in U.S. Currency*, 95 F.3d 248, 252 (2nd Cir. 1996).

Decisions in other cases, although not dispositive, may also shed light on the lack of justification for the government's position. "[A] string of losses can be indicative." *Pierce*, 487 U.S. at 566.

An EAJA fee petition must include: 1) a showing that the applicant is a prevailing party; 2) a showing that the applicant is eligible to receive an award; 3) an itemized statement containing time expended and rates charged; and 4) an allegation that the position of the United States was not substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 408 (2004).

### 2.    Paragraph (b) Fees

28 U.S.C. § 2412(b) provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

Section 2412(b) incorporates the common law exceptions to the American rule on attorneys' fees. *Kerin*, 218 F.3d at 190. Thus, fees may be awarded where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46

(1991) ("… shows bad faith by delaying or disrupting the litigation", "… making the prevailing party whole for the expenses caused by his opponent's obstinacy.").

To award fees under this section, the district court must find: 1) the losing party's claim was meritless, and 2) brought for an improper purpose such as harassment or delay. *Kerin*, 218 F.3d at 190; *Sierra Club v. Army Corps of Engineers*, 772 F.3d 383, 390 (2nd Cir. 1985). A claim is meritless when it lacks any legal or factual basis. *Id.*

Fee awards under § 2412(b) are not subject to a ceiling on the hourly rate. Instead, the statute only requires that the fees are "reasonable." "Reasonable fees" may, but are not required to, be determined using the "lodestar" approach which multiplies the hours reasonably expended in the litigation by a reasonable hourly rate to arrive at a figure. *Kerin*, 281 F.3d at 190.

## II.     DISCUSSION

### A.     Section 2412(d) EAJA Showing

Ms. Lewis tracks the requirements of *Scarborough*.

#### 1.     Ms. Lewis Was The "Prevailing Party"

In the present case, clearly, Ms. Lewis was the "prevailing party." Ms. Lewis' claim for coverage and related request for a determination that the CGM device is durable medical equipment was fully vindicated. By contrast to other areas, the Secretary met and conferred on this element and has indicated that the Secretary does not dispute that Ms. Lewis is the prevailing party.

#### 2.     Ms. Lewis Is Eligible To Receive An EAJA Award

EAJA fee awards are available to private litigants with a net worth not exceeding $2,000,000. 28 U.S.C. § 2412(d)(2)(B)(i). Ms. Lewis is submitting a declaration to verify her status. Exhibit A: Lewis declaration. Ms. Lewis' net worth has never exceeded $2,000,000. Consequently, Ms. Lewis is an individual who is eligible to collect fees and costs under the EAJA.

### 3.    Itemized Statement

In this litigation, Ms. Lewis was represented by Laurie Bejoian (acting as local counsel) and

Parrish Law Offices (Debra Parrish, James Pistorino, and Bridget Noonan).  An itemized statement

of the time expended, rates charged and expenses incurred is attached as Exhibit B.

Broken down by firm, the totals are:

| Firm | Hours | Fees | Expenses | Total |
|------|-------|------|----------|-------|
| Burke & Associates (Laurie Bejoian) | 69.50 | $24,325.00 | $0.00 | $24,325.00 |
| Parrish Law Offices (Debra Parrish, James Pistorino, Bridget Noonan) | 382.65 | $164,663.00 | $1,761.60 | $166,424.60 |
| **Total** | **452.15** | **$188,988.00** | **$1,761.60** | **$190,749.60** |

These fees and expenses are the direct result of the Secretary's unreasonable denials

necessitating litigation of this matter.  In addition, a significant portion of the fees are the result of

the Secretary's litigation conduct as described above and below.

### 4.    The Secretary's Position Was Not Substantially Justified

At base, all that is needed to decide this issue is the fact that for more than six years, the

Secretary denied Ms. Lewis CGM coverage on the grounds that a CGM does not "primarily and

customarily serve a medical purpose."  That position is so at odds with reality that it is hard to

understand how anyone could hold that belief.

As noted above, this Court is not the first to determine that a CGM is DME.  At least 40

different Medicare ALJs have issued more than 55 decisions coming to the same conclusion.  See

Http://dparrishlaw.com/medicare-acknowledges-dexcoms-g5-as-a-covered-medicare-benefit/.  That

is, at least 40 experts in the Department's rules and regulations considered the Secretary's position,

found it lacking, and told the Secretary so more than 55 times.  Yet the Secretary persisted in his

denials.  Further, the courts in the *Whitcomb* and *Bloom* cases told the Secretary his position was not

10

well founded. *Whitcomb v. Hargan*, 2:17-CV-14 (E.D. Wisc. Oct. 26, 2017); *Bloom v. Azar* 5:16-cv-121 (D. Vt. Jan. 29, 2018). Indeed, the *Whitcomb* court told the Secretary his position was "arbitrary and capricious." *Whitcomb* at 14-15. This is the very definition of a "string of losses" indicative that a position lacks "substantial justification." *Pierce*, 487 U.S. at 566.

      In addition to the ALJs, other units within the Department were telling the Secretary that his position was unreasonable. In April 2016, the Civil Remedies Division of the Department told the Secretary that a CGM is DME, that "precautionary"[3] was an inappropriate limitation to try to graft on the definition of DME, and that the Secretary's denial of CGM coverage failed the "reasonableness" standard. DAB No. CR4596, 2016 WL 2851236 at 14, 18. Still, the Secretary persisted advancing this unreasonable position.

      Moreover, because no doctor, study, professional organization, industry party/group, or competent authority of any kind has ever opined that a CGM is not "primarily and customarily used for a medical purpose", the Secretary's position was wholly without factual basis.

      Further, the entire conduct of the proceedings appears to have been designed to maximize delay. For example, the statute requires the Secretary to issue MAC decisions within 90 days. 42 U.S.C. §1395(d)(2)(a); 42 C.F.R. §405.1100(c). However, the Secretary did not issue a MAC decision for more than 550 days. AR 1-13. Further, the Secretary is required to respond to a request for escalation within 5 days. 42 C.F.R. §405.1132(a)(2). The Secretary did not do that either.

      Independently, in this litigation, there was no substantial justification for the Secretary's request for dismissal based on CMS Ruling 1682R. Moreover, there is no excuse for the tactics of

---

[3] "'When *I* use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean—neither more nor less.'" Lewis Carrol, *Through the Looking Glass*, Chap 6, p. 205 (1934).

refusing to meet and confer to correct the error of dismissal and thereafter pretending that the Complaint did not seek payment for claims.  On its own, the Secretary's conduct in this regard delayed resolution of this litigation by more than six months.

The Secretary cannot meet his burden of making a "strong showing" that his position had substantial justification.

### 5.     There Are No "Special Circumstances"

There are no "special circumstances" that would make an EAJA award unjust.

### 6.     A Fee Award Furthers The Purposes of EAJA

As detailed above, the EAJA has two complementary purposes: 1) to prevent the expense of litigation from discouraging parties from challenging unreasonable government action or inaction; and 2) to deter the government from litigating unreasonable positions.  Both of those purposes would be served by a fee award in this case.

First, if Ms. Lewis were forced to bear the expense of a multi-year litigation, that would vastly outweigh the amounts at issue ($2,842.00).  Thus, the sheer burden of the litigation would preclude any economically rational actor from challenging the government's unreasonable conduct in this case.  Accordingly, an award would be consistent with the very purpose of EAJA.

Second, an award would further the deterrence purpose of EAJA.  As detailed above, the Secretary has not been deterred by:

1) at least 40 ALJs telling the Secretary his position was not correct;

2) multiple ALJs telling the Secretary his position was not correct with respect to Ms. Lewis, specifically;

3) one District Court finding the Secretary's position arbitrary and capricious, when that decision had become final;

4) another District Court describing the Secretary's position as "head scratching";[4]

5) the Secretary's own Civil Remedies Division telling the Secretary his position was not correct; and

6) one District Court finding the Secretary's position arbitrary and capricious, when that decision had become final.

All of that had happened *before* this Court's decision. Incredibly, even after two district court decisions rejecting the Secretary's "precautionary" position with respect to CGMs, the Secretary was not deterred and has continued to deny claims on that basis. See Exhibit D. In short, the Secretary is impervious to negative authority and reason.

An EAJA award may serve the purpose of deterring the Secretary from continuing to advance this unreasonable position; that is one purpose of EAJA.

### 7. A Rate Enhancement Is Appropriate

Pursuant to 28 U.S.C. § 2412(d)(2)(A), attorneys fees in excess of $125/hour may be awarded if the court determines that an increase in the cost of living or some other special factor justifies the higher rate. *See, e.g., Gomez-Beleno*. 644 F.3d at 146-7.

### (a) Cost Of Living Adjustment (COLA)

The Consumer Price Index is used to calculate the proper cost of living adjustment to the statutory rate. *See, e.g., Harris v. Sullivan*, 968 F.2d 263, 264-5 (2nd Cir. 1992). The CPI-U for the Northeastern Region in March 2018 (263.6) divided by the same for March 1996 when the statutory rate was enacted (162.8) gives a multiplier factor of 1.62. The statutory rate ($125) multiplied by this factor results in an adjusted rate of $202.50.

Applying this factor to the billed hours gives the following:

---

[4] *Finigan v. Burwell*, 189 F. Supp. 3d 201 (D. MA 2016).

| Firm | Hours | Fees | Expenses | Total |
|------|-------|------|----------|-------|
| Burke & Associates (Laurie Bejoian) | 69.50 | $14,073.75 | $0.00 | $14,073.75 |
| Parrish Law Offices (Debra Parrish, James Pistorino, Bridget Noonan) | 382.65 | $77,257.00 | $1,761.60 | $79,018.60 |
| **Total** | **452.15** | **$91,330.75** | **$1,761.60** | **$93,092.35** |

### (b)      Special Factor Adjustment

In addition to COLA, the EAJA rate may be enhanced using the "special factor" provision in 28 U.S.C. §2412(d)(2)(A)(ii) based on a showing that the case requires "an identifiable practice specialty not easily acquired by reasonably competent attorney." *Sprinkle v. Colvin* at 426, citing *Raines v. Shalala*, 44 F.3d 1355, 1361 (7th Cir. 1995). "We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce v. Underwood*, 487 U.S. at 572.

Ms. Parrish's specialized knowledge and experience was required to competently represent Ms. Lewis (and CGM users more generally). Only someone with a technical/biology background would be able to understand the differences between the various CGM devices, finger sticks and how they work, and diabetic conditions to both put forth Ms. Lewis' arguments/claims and to rebut the Secretary's. In addition, a detailed knowledge of the Medicare appeals process was/is required. Ms. Parrish brought that specialized background and knowledge to bear in successfully representing Ms. Lewis.

One aspect of that specialized knowledge is Ms. Parrish's and the Parrish Law Offices' unique knowledge of the state of CGM litigation before the Department. ALJ decisions are not generally publicly available. Thus, it was only because of the Parrish Law Offices' position that

14

information about the number of ALJs who had ruled that CGMs qualified as DME was available.

Special expertise in Medicare law by attorneys from a Medicare advocacy organization was enough to convince the district court in *Connecticut State Dept. of Social Services v. Thompson*, 289 F.Supp. 198, 204-5 (D.Conn. 2003).  The case was reversed on the merits which ended the entitlement to fees so there was no criticism of the expertise issue.  *Connecticut State Dept. of Social Services v. Thompson*, 428 F.3d 138 (2nd Cir. 2005).  A tax attorney who was a former IRS Special Agent met the test in *U.S. v. Scheingold*, 293 F.Supp.2d 447, 452 (D.N.J. 2003).  Attorney Parrish's background would satisfy both of these courts.

Ms. Parrish customarily charges $490-525 per hour to handle Medicare matters. (*See Affidavit of Debra M. Parrish, attached as Exhibit C*).  Ms. Parrish is a member of the American Health Lawyers Association, the National Association of College and University Attorneys, the Council of Science Editors, the Society for Research Administrators, and has been handling Medicare appeals of denied claims since 1989.

Applying the Parrish Law Offices usual and customary rates and COLA rates to Burke & Associates gives the following:

| Firm | Hours | Fees | Expenses | Total |
|------|-------|------|----------|-------|
| Burke & Associates (Laurie Bejoian) | 69.50 | $14,073.75 | $0.00 | $14,073.75 |
| Parrish Law Offices (Debra Parrish, James Pistorino, Bridget Noonan) | 382.65 | $164,663.00 | $1,761.60 | $166,424.60 |
| **Total** | **452.15** | **$178,736.75** | **$1,761.60** | **$180,498.35** |

**B.      Section 2412(b) Showing**

As detailed above, fees under Paragraph (b) are available if: 1) the losing party's claims were meritless; and 2) the claims were raised for an improper purpose such as harassment or delay. *Kerin*, 218 F3d at 190; *Sierra Club*, 772 F.2d 390.  A claim is meritless when it lacks any legal or factual support.  *Id*.

In the present case, for the same reasons set forth above with regard to the lack of "substantial justification", the Secretary's basis for denial, resistance to Ms. Lewis' motion for summary judgement, and opposition to Ms. Lewis' motion to alter/amend were totally lacking in any legal or factual support.  No rational person could conclude that a CGM does not "primarily and customarily serve a medical purpose."  That position was baseless since the beginning.

Likewise, there was no basis for the Secretary's claim that Ms. Lewis no longer had an interest in the $2,842 she had been seeking for more than six years.  Further, the Secretary's refusal to meet and confer in compliance with the Local Rules and the resulting expense is the "vexatious", "wanton" conduct, and "delaying and disrupting the litigation" for which the Secretary should have to make Ms. Lewis "whole for the expenses caused by [the Secretary's] obstinacy." *Chambers*, 501 U.S. at 46.

The Secretary's "improper purpose" appears to have been harassment/delay.  As noted above, at each step, the Secretary sought to maximize delay.  As a result, Ms. Lewis has been forced to litigate this matter for more than six years.

Regrettably, this is not the first time that the Department has engaged in conduct justifying an award of fees under Paragraph (b).  For example, in *Gray Panthers Project Fund v. Thompson*, 304 F.Supp.2d 36 (D.D.C. 2004), a statute required the Secretary to collect Medicare plan information from offering entities and *mail* information comparing the plans to eligible persons, every year.  The Secretary simply disregarded his clear, statutory obligations because the Secretary

preferred a different approach (updates less than once a year, telephone/Internet updates).  As a result, the plaintiffs were forced to bring an action.  As a result of the Secretary's wanton conduct, the Court found that the Secretary had engaged in bad faith and awarded fees pursuant to Paragraph (b).

Likewise, in the present case, there is a clear statutory/regulatory obligation to cover items that are "primarily and customarily used for a medical purpose" (in addition to meeting other criteria).  The Secretary wantonly disregarded that requirement.  Seeking to defend his disregard, the Secretary offered the non-sensical position that a CGM is "not primarily and customarily used for a medical purpose."  Just as in *Gray Panthers*, the disregard of a clear requirement is a basis for finding bad faith.  Likewise, the Secretary's tactics of requesting dismissal for mootness and refusing to meet and confer delayed and disrupted the litigation.  *See also American Hospital Ass'n v. Sullivan*, 938 F.2d 216, 219-222 (D.D.C. 1991) (bad faith where opponent "forced to sue to enforce a plain legal right.").

As noted above, fees under Paragraph (b) are not subject to a rate cap and are typically determined using the lodestar approach.  In this case, Ms. Lewis believes that the fees actually charged at the attorneys' standard billing rates are the appropriate measure.  Accordingly, the Court should award the fees and expenses listed on the billing statements.

## III.   CONCLUSION

An EAJA award is appropriate in this case.  Indeed, an EAJA award may be the most efficient route to stopping the Secretary's repeated expenditure of resources litigating an unreasonable position and thwarting the will of Congress.

Dated: May 4, 2017                    Respectfully submitted,

                                      CAROL LEWIS, By her attorneys,
                                      */s/ Laurie J. Bejoian*
                                      LAURIE J. BEJOIAN BBO No. 545312
                                      325B Great Road
                                      Littleton, MA 01460
                                      978-486-9145
                                      ljblaw.ljbejoian@gmail.com

                                      OF COUNSEL
                                      DEBRA M. PARRISH
                                      PARRISH LAW OFFICES
                                      788 Washington Road
                                      Pittsburgh, PA 15228
                                      412-561-6250
                                      debbie@dparrishlaw.com

## CERTIFICATE OF ATTEMPTED CONFERENCE

On Thursday, April 26, counsel for Ms. Lewis (Laurie Bejoian, Debra Parrish, and James Pistorino) attempted to meet and confer with counsel for the Secretary (Ms. Anita Johnson). Other than agreeing that Ms. Lewis was the prevailing party, Ms. Johnson refused to discuss any of the other issues related to this fees motion, including, e.g., whether a COLA adjustment is appropriate if fees are awarded.