## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CAROL LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 1:15-CV-13530-NMG |
| | ) | |
| ALEX AZAR | ) | |
| Secretary, United States Department | ) | |
| of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

### DEFENDANT'S OPPOSITION
### TO PLAINTIFF'S MOTION FOR EAJA FEES AND COSTS

Defendant, the Secretary of the U.S. Department of Health and Human Services, requests that the Court deny Plaintiff's Motion for Fees and Costs of $190,749.60 under the Equal Access to Justice Act ("EAJA") because the Secretary's position throughout this litigation has been substantially justified and the Secretary has had no improper purpose in pursuing this litigation. 28 U.S.C. §§ 2412(b), (d).

## I.    BACKGROUND

Plaintiff is a Medicare beneficiary with Type I diabetes.  AR 644-46.  Pursuant to her physician's prescription, Plaintiff used a Medtronic® continuous glucose monitor ("CGM") provided by Minimed Distribution Corporation as well as a traditional blood glucose monitor. AR 828-31, 881-888.  Plaintiff's CGM consisted of a disposable sensor, a transmitter, and a receiver.  AR 441.  The disposable sensor, which measured Plaintiff's interstitial (e.g. tissue) glucose levels, was positioned subcutaneously under her skin and replaced every three to seven

days.  AR 190.  The sensor continuously sent the interstitial glucose measurements to a transmitter, which then sent them to a receiver, where Plaintiff could view them.  AR 190.  The interstitial glucose measurements taken by the Medtronic® CGM system were not sufficiently accurate for use in making therapeutic decisions; therefore, Plaintiff was required to confirm her glucose measurement with a traditional blood glucose monitor (e.g. fingerstick) before making adjustments to her insulin regimen.  AR 9-10, 881-888.  As a result, the FDA limited its approval of the Medtronic CGM® to adjunctive use, that is, use that is not approved for "making therapy adjustments," but is limited to providing an indication of when another test is required, a finger stick that is a traditional blood glucose monitor.  AR 11.

Plaintiff requested Medicare Part B coverage of the disposable sensors and external transmitter she used with her Medtronic® CGM between March 12, 2012 and September 17, 2012.  AR 752-755.  Plaintiff's requests were denied at all levels of the administrative appeals process.  AR at 679-86, 752-755, 764-68.  Plaintiff appealed to the Medicare Appeals Council ("Council").  AR 3-13.  In making its decision, the Council noted that in order to receive Medicare coverage, the CGM was required to fall within the defined Medicare benefit category "durable medical equipment" ("DME"), and, thus serve a primarily and customarily medical purpose.  42 C.F.R. § 414.202.  The Council determined that Plaintiff's CGM did not qualify as DME and, as a result, the disposable sensors and external transmitter used with the CGM were not covered by Medicare Part B.  AR 3-13.  In reaching its decision, the Council referenced statutory and regulatory provisions as well as NCD 40.2, LCD 11530/L33822, and related LCA A33614/A52464, finding that "since the CGM does not substitute for the existing means of controlling insulin usage, we conclude that it merely provides an added precaution and does not itself serve a primary medical purpose."  AR 7-11.

## II.      ARGUMENT

Plaintiff requests an award of attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA").  However, "the EAJA is not simply a fee shifting statute.  The EAJA is . . . a waiver by the government of its sovereign immunity and so must be construed strictly in favor of the government."  *Aronov v. Napolitano*, 562 F.3d 84, 88 (1st Cir. 2009).  For the reasons set forth below, Plaintiff is not entitled to EAJA fees under 28 U.S.C. §2412(b) or (d) because the Secretary's position throughout this litigation was substantially justified and the Secretary did not have an improper purpose in pursuing this litigation.

### A.  Plaintiff Is Not Entitled To Fees Under 28 U.S.C. § 2412(d) Because The Secretary's Position In This Litigation Was Substantially Justified.

In order to receive an award of attorney fees and expenses under 28 U.S.C. §§ 2412(d), the Court must conclude: "(1) that [Plaintiff] is the prevailing party in the civil action; (2) that [her] petition was timely filed; (3) that the government's position was not substantially justified; and (4) that no special circumstances make an award against the government unjust." *Castaneda-Castillo v. Holder*, 723 F.3d 48, 57 (1st Cir. 2013).

Plaintiff is not entitled to an award of attorney's fees and costs because the Secretary's position throughout this litigation was substantially justified.  The Supreme Court has held that the government's position is substantially justified if it is "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  It elaborated, "a position can be substantially justified even though it is not correct" so long as "it has a reasonable basis in law and fact." *Id.* at 566 n.2.  Thus, substantially justified does not mean "'justified to a high degree,'" but rather, is satisfied "if there is a 'genuine dispute,' or 'if reasonable people could differ as to [the appropriateness of the contested action].'" *Id.* at 565 (citations omitted).

The Secretary had substantial justification for his consistent position that Plaintiff's CGM did not qualify as DME under 42 C.F.R. § 414.202 because it did not primarily and customarily serve a medical purpose.  The District Court, Eastern District of Wisconsin, has agreed with this position, denying EAJA fees in an action on the same unapproved CGM's, holding that the Secretary was substantially justified in his position that the CGM's did not qualify as DME, and accordingly, were not covered by Medicare.  *Whitcomb v. Burwell*, 2015 WL 5254518, at 3 (E.D. Wis.).   In order for an item or service to be covered by Medicare, the item or service must be (1) eligible for coverage under a defined benefit category, (2) reasonable and necessary for the diagnosis or treatment of an injury or illness, and (3) not otherwise excluded.  42 U.S.C. §§ 1395k, 1395x, 1395y(a)(1)(A),(B).  To be eligible for coverage under the defined benefit category for durable medical equipment ("DME"), the operative regulation requires the equipment to "primarily and customarily . . . serve a medical purpose."  42 C.F.R. § 414.202(3). As the Secretary contended throughout the proceedings in this matter, Plaintiff's CGM did not primarily or customarily serve the medical purpose of controlling her diabetes because Plaintiff could not rely on its readings to adjust her insulin regimen.  *See* AR 10-11, 79-84, 100, 888 (noting that prior to adjusting insulin dosages, users of CGMs should confirm their glucose reading with a traditional blood glucose monitor).  Consequently, the Secretary's position that CGMs did not primarily and customarily serve a medical purpose was substantially justified.

Plaintiff argues that the Secretary's substantive position was not substantially justified because it was "at odds with reality."  Pl.'s Mot. for Fees & Costs at 10.  Plaintiff cites to prior administrative case law where tribunals concluded that CGMs were covered by Medicare.  *Id*. Ab initio, prior administrative law decisions are not precedential and should not be relied upon to determine whether the Secretary's position is substantially justified.  *See Whitcomb,* 2015 WL

5254518, at 3. And coverage for CGMs is far from being a settled issue in administrative case law. Indeed, administrative tribunals have declined to grant coverage for CGMs, for the same reasons the Secretary advanced in this litigation, including in the administrative appeals leading up to this case (*see* AR 3-13, 58-65), as well as in the administrative appeals in *Bloom v. Azar*, 5:16-CV-121, 6 (D. Vt. Jan. 29, 2018) ("*Bloom*") (noting that the Medicare Appeals Council issued an unfavorable decision) and *Whitcomb v. Hargan*, 2:17-CV-14, at 3-4 (E.D. Wis. Oct. 26, 2017) ("*Whitcomb*") (noting that the Medicare Appeals Council issued an unfavorable decision). *See, In the case of J.M.,* Council Docket No. M-13-761, 2013 WL 7965732 (Mar. 29, 2013); *In the case of J.S.,* Council Docket No. M-11-1598, 2011 WL 6968051 (Aug. 3, 2011); *In the case of K.M.*, Council Docket No. M-10-1481, 2010 WL 4877156 (Oct. 29, 2010). Moreover, Plaintiff's reliance on *Local Coverage Determination Compl.: Glucose Monitors (L11530/L33822 and Local Coverage Articles A33614/A52464)*, DAB No. CR4596 (2016) to support her assertion that the Secretary's position was "inappropriate" is particularly misleading, given that the opinion was vacated by the Council. *See LCD Compl.: Glucose Monitors (L11530/L33822 and Local Coverage Articles A33614/A52464)*, DAB Decision No. 2782 (2017). And the district court decisions in *Bloom* and *Whitcomb* do not render the Secretary's position not substantially justified. The Supreme Court emphasized that, "[o]bviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified." *Pierce*, 487 U.S. at 568. Accordingly, the administrative and district court case law cited by Plaintiff does not indicate that the Secretary's position was not substantially justified.

Plaintiff then argues that the Secretary's position was not substantially justified because "no doctor, study, professional organization, industry party/group, or competent authority of any

kind has ever opined that a CGM is not 'primarily and customarily used for a medical purpose."
Pl.'s Mot. for Fees & Costs at 11.  In setting forth this argument, Plaintiff ignores the physicians'
opinions and medical literature in the administrative record acknowledging that the readings
from Plaintiff's Medtronic® CGM were unreliable, on their own, for purposes of adjusting
Plaintiff's insulin regimen.  AR 10-11 (the manufacturer of Plaintiff's CGM cautions that it must
be used in conjunction with traditional finger stick testing), 888 (Plaintiff's physician noted that
Plaintiff must consult home blood glucose monitor before adjusting pump doses); AR 11 (the
FDA states that Plaintiff's CGM device "is not intended to be used directly for making therapy
adjustments, but rather to provide an indication of when a finger stick may be required"); AR 79-
84 (the American Association of Clinical Endocrinologist, Continuous Glucose Monitoring Task
Force noted that CGMs must be calibrated through self-monitoring of blood glucose, i.e. the
finger stick method, and that use of the finger stick method is required in order to make acute
treatment decisions); AR 100 (a study published in the *Journal of Diabetes Technology &
Therapeutics* directed its participants to "use CGM data as an adjunct to, and not as a
replacement for [self-monitoring of blood glucose] fingersticks when making diabetes-related
treatment decisions (e.g. insulin dose modifications)" and concluded that the accuracy of CGMs
does not yet equal the accuracy of self-monitoring of blood glucose and thus CGMs are best used
as an adjunctive device until technological advances are made).  As a result, given the substantial
documentation in the administrative record making it clear that Plaintiff's Medtronic® CGM was
approved only for adjunctive use with a traditional blood glucose monitor, the Secretary's
position that the CGM did not primarily and customarily serve a medical purpose was
substantially justified.

Last, Plaintiff argument that "there was no substantial justification for the Secretary's request for dismissal based on CMS Ruling 1682R" is without merit.  Pl. Mot. for Fees & Costs at 11.  The Secretary moved to dismiss Plaintiff's Complaint after Plaintiff admitted that she no longer used the Medtronic® CGM at issue in the litigation, leading the Secretary to reasonably conclude that she no longer had a legally cognizable stake in the outcome of the case.[1]  Pl. Opp. to HHS' Mot. To Affirm HHS' Decision and Reply to Def. Opp. to Pl.'s Mot. for Summ. J, at 10, n 12.  As support for her motion to dismiss, the Secretary explained that the request for relief in Plaintiff's Complaint demanded declaratory orders requiring the Secretary to cover Plaintiff's Medtronic® CGM.  HHS' Reply to Pl.'s Opp. to HHS' Mot. to Affirm HHS' Decision and Reply to Def.'s Opp. to HHS' Mot. For Summ. J, at 1-3.  Given that Plaintiff no longer used the Medtronic® CGM, the Secretary contended that Plaintiff's Complaint was moot because ". . . an intervening circumstance deprive[d] the plaintiff of a 'personal stake in the outcome of the lawsuit.'" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78) (1990)).  The Court's initial ruling on Plaintiff's position was in agreement with the Secretary and the Court dismissed the Complaint.  Order (Aug. 18, 2017) ("Because Plaintiff is not using the subject CGM equipment, she lacks a legal interest in the outcome of the case and, therefore, her claims will be dismissed as moot").  It was not until after that Ruling that Plaintiff made it clear in her Motion to Alter or Amend Judgment that she was seeking payment for past claims, resulting in the Court's reversal of the dismissal. Pl. Mot. To Alter or Amend J. at 12; Mem. & Order, at 4-5 (Apr. 5, 2018).  That is, the

---

[1] Plaintiff admitted to using the Dexcom G5™, a CGM device that is approved by the FDA for use without a traditional blood glucose monitor and thus is covered pursuant to CMS Ruling No. 1682-R.

Secretary's position was substantially justified because, prior to Plaintiff's additional argument in her Motion to Alter or Amend Judgment, the Court itself had found Plaintiff's position persuasive.

For the reasons set forth above, the Secretary contends that his position was substantially justified, even if it was rejected by this Court after Plaintiff's Motion to Alter or Amend.  The Secretary's position was supported by the Medicare statute, the Secretary's regulations and guidance on what types of equipment are primarily and customarily used to serve a medical purpose, and the administrative record.  Therefore, the Secretary requests that this Court deny Plaintiff's request for $190,749.60 in fees and costs.

## B.  Plaintiff Is Not Entitled To Fees Under 28 U.S.C. § 2412(b) Because the Secretary's Position Had Merit And Was Not Raised For An Improper Purpose

This Court should decline to grant Plaintiff fees and costs pursuant to 28 U.S.C. § 2412(b).  The EAJA statute permits the Court to hold the government liable for attorney's fees and costs to the same extent a private party would be liable under common law or statutory law. 28 U.S.C. § 2412(b).  The statute thus permits the Court to award attorney's fees and costs if it determines that the government "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Kerin v. U.S.P.S.*, 218 F.3d 185, 190 (2d Cir. 2000).  In order to make an award under 28 U.S.C. § 2412(b), the court must find "that the losing party's claim was (1) meritless; and (2) brought for improper purposes such as harassment or delay."  *Id*. (citing *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985).  "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice."  *Kerin*, 218 F.3d at 190. Accordingly, attorney's fees and costs should be awarded only in "extraordinary circumstances and for dominating reasons of justice."  *U.S. v. Baybank Middlesex,* 738 F.Supp. 609, 610 (D.

Mass. 1990) (quoting *Cordeco Dev. Corp. v. Santiago Vasquez*, 539 F.2d 256, 263 (1st Cir.), *cert. denied*, 429 U.S. 978 (1976)).

This Court should decline to grant attorney's fees and costs under 28 U.S.C. § 2412(b) because Plaintiff has failed to show that the Secretary's position was meritless and that the Secretary acted for an improper purpose.  As explained above, the Secretary's position that Plaintiff's Medtronic® CGM was not covered by Medicare was substantially justified and thus had merit.  Additionally, while Plaintiff recites that "[t]he Secretary's 'improper purpose' appears to have been harassment/delay[,]" Plaintiff has failed to point to any instance in which the Secretary harassed her or engaged in unnecessary delay.  The Secretary, acting through counsel, treated Plaintiff with respect and professional courtesy throughout the course of this litigation and filed appropriate pleadings responding to arguments raised by Plaintiff as necessary and advancing arguments in hopes of resolving the litigation.  Plaintiff compares the Secretary's conduct in this litigation to the government conduct in *Gray Panthers Project Fund v. Thompson*, 304 F.Supp.2d 36 (D.D.C. 2004).  However, *Gray Panthers* is distinguishable from this case.  In *Gray Panthers*, the Court concluded that fees and costs were warranted because the Secretary ignored unambiguous statutory mandates and admitted that his position was not substantially justified.  *Id*. at 38-39.  Neither circumstance exists here.  The statute and the regulation did not expressly mention the coverage of CGMs, thus the Secretary used his best judgment in interpreting the relevant statutory and regulatory provisions and policy guidance to develop his substantially justified position.  Consequently, comparison to *Gray Panthers* is unwarranted and the Secretary requests that this Court decline to award fees and costs pursuant to 28 U.S.C. § 2412(b).

### C.  The Requested Fees Are Clearly Unreasonable

If this Court awards fees to Plaintiff, the Secretary asks that it reduce the requested fees

because Parrish Law Offices is not entitled to a fee enhancement pursuant to 28 U.S.C.

§ 2412(d)(2) and the requested fees are unreasonable.

### 1.  Parrish Law Offices Is Not Entitled To A Fee Enhancement Pursuant to 28 U.S.C. § 2412(d)(2).

In the unlikely event the Court finds that the Secretary's position was not substantially

justified, the Secretary requests that the Court examine Plaintiff's request for an increased hourly

rate of approximately $430 per hour[2] and find it excessive.

The EAJA provides that the amount of attorney's fees awarded:

> shall be based upon prevailing market rates for the kind and quality of the services
> furnished, except that . . . attorney fees shall not be awarded in excess of $125 per
> hour unless the court determines that an increase in the cost of living [since 1996,
> when the current version of the EAJA was passed] or a special factor, such as the
> limited availability of qualified attorneys for the proceedings involved, justifies a
> higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii).

While EAJA clearly sets the hourly rate for an attorney to be $125, the Secretary

does not dispute the appropriateness of adjusting that amount to take into account a cost of living

adjustment.  Thus, if an award of fees is granted, the Secretary accepts Plaintiff's calculation of

the hourly rates as adjusted by the Consumer Price Index ("CPI"), or $201.31 per hour.

However, the Secretary disputes that a special factor enhancement should be applied for

the work performed by Parrish Law Offices.  As the Supreme Court has expounded, the special

---

[2] The rates Parrish Law Offices charged vary.  Pl. Mot. for Fees and Costs, Ex. B.  However,
taking the total fee proposed by Parrish Law Offices and dividing it by the number of hours
Parrish Law Offices purportedly worked on this case, the average fee is $430 per hour.  Pl. Mot.
for Fees and Costs at 10.

factors contemplated in 28 U.S.C. § 2412(d)(2)(A)(ii) "are not of broad and general application" and should be limited to situations in which the "attorneys have some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce*, 487 U.S. at 573 (concluding that "[t]he novelty and difficulty of issues, the undesirability of the case, the work and ability of counsel, and the results obtained" were insufficient factors to justify the award of an enhanced fee). The First Circuit has elaborated that it is not whether the attorney qualifies as a rarified specialist that is important but whether the specialization was essential for competent representation. *Atlantic Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 492 (1st Cir. 2000) (concluding that specialized experience in fisheries law did not justify the award of an enhanced fee). *See also Castaneda-Castillo v. Holder*, 723 F.3d 48, 76 (1st Cir. 2013) (concluding that specialized experience in immigration law did not justify the award of an enhanced fee); *Healey v. Leavitt*, 485 F.3d 63, 70 (2d Cir. 2007) (concluding that specialized experience in Medicare did not justify the award of an enhanced fee because "[w]hile one cannot deny the complexity of the Medicare statute and the regulations promulgated thereunder, this regulatory scheme is no more complex than countless other federal regulatory schemes, and attaining proficiency in these areas is not beyond the grasp of a competent practicing attorney with access to a law library and other accoutrements of modern legal practice.")

Parrish Law Offices asserts that its attorneys are entitled to an upward fee adjustment because Attorney Parrish has a background in technology and biology and the attorneys at Parrish Law Offices have a "unique knowledge of the state of CGM litigation before the Department." Pl.'s Mot. for Fees and Costs at 14. Neither of these assertions warrant an upward fee adjustment under 28 U.S.C. § 2412(d). First, Plaintiff did not require representation by an

individual with a background in technology and biology.  The primary legal issue in the case was whether Plaintiff's Medtronic® CGM should be covered by Medicare under the DME benefit. Even without a scientific background, it is not difficult to understand the components of the CGM system and the physician opinions and medical literature elucidating whether confirmatory testing is necessary.  Accordingly, Attorney Parrish's specialized background was unnecessary to her effective representation of Plaintiff.  Second, Parrish Law Office's "unique knowledge of the state of CGM litigation before the Department" does not qualify its attorneys for a fee enhancement.  As the First Circuit has explained, to qualify for a fee enhancement, an attorney must have a specialized skill and that specialized skill must be necessary to competently represent Plaintiff. *Atlantic Fish Spotters Ass'n*, 205 F.3d at 492.  Here, Parrish Law Offices has failed to demonstrate that Attorney Pistorino and Attorney Noonan had any specialized skill beyond general lawyerly knowledge that was necessary for Plaintiff's competent representation.

### 2.  Plaintiff's Requested Fees Are Unreasonable.

Both 28 U.S.C. §§ 2412(b) and (d) require an award of attorney's fees to be reasonable. 28 U.S.C. §§ 2412(b), (d)(2)(A).  As discussed below, the fees requested in this litigation are unreasonable because Plaintiff drew heavily on pleadings Parrish Law Offices filed in other similar litigation; yet, Plaintiff is requesting as much as seven times more than the amount she requested in the similar cases and Plaintiff is requesting fees for unrelated administrative litigation.  Consequently, if this Court grants Plaintiff's request for attorney's fees, the Secretary asks that it reduce the fees to a reasonable amount.

The pleadings filed in this case largely echo the pleadings filed in *Whitcomb* and *Bloom*. Illustratively, fifty of the paragraphs in Plaintiff's Complaint repeat the paragraphs in the prior-

filed Whitcomb Complaint.[3]  *See Whitcomb v. Sebelius*, Docket No. 2:13-C-00990, E-File Doc.

30 (filed May 6, 2014).  Additionally, portions of the Memorandum in Support of Plaintiff's

Motion for Summary Judgment filed in this case are substantially similar to portions of the Brief

in Support of Plaintiff's Request for Judicial Review filed in *Whitcomb* (*see Whitcomb*, Docket

No. 13-C-990, E-File Doc. 48 (Oct. 30, 2014)).[4]  Yet, despite the fact that the attorneys here

have clearly relied heavily on pleadings filed in prior cases, the requested attorney's fees are

seven times what was requested in *Whitcomb* and two times what was requested in *Bloom*.  *See*

*Whitcomb*, Docket No. 2:13-cv-00990, E-File Doc. 53 at 13 (requesting $26,741.34 in attorney's

fees); *Bloom*, Docket No. 5:16-cv-00121, E-File Doc. 53, at 6 (Mar. 1, 2018) (requesting

$90,324.12 in attorney's fees).

 Further, Plaintiff is requesting fees for administrative litigation that did not directly

involve this case.  Plaintiff requests fees for an administrative challenge she filed contesting the

validity of Local Coverage Determination L11530/L33822 and Local Coverage Articles

A33614/A52464.  *See* Pl.'s Mot. for Fees & Costs, Ex. B, at 8-11, 13-14, 16-22, 24, 26-28, 31,

37, 40 (requesting payment for services rendered for the "LCD challenge").  This administrative

challenge did not address an issue in this case.  Plaintiff admitted that the LCD challenge was a

"separate action" that was independent from the current litigation.  *Pl. Resp. to Def.'s M. to*

---

[3] The sole differences in the paragraphs are the named parties in the litigation and the references
to prior paragraph numbers.  Compare Paragraphs 1, 3, 6, 14-16, 19-20, 22-24, 27, 29, 31-39, 46-
52, 55, 59, 60, 66-69, 76-77, 105-116, 121-122 in the Complaint filed in this litigation to
Paragraphs 1, 3, 4, 15-17, 20-21, 23-25, 26, 27, 29-37, 44-50, 52, 53, 54, 55-58, 61-62, 82-94,
98-99 in the Complaint filed in *Whitcomb*, Docket No. 2:13-C-00990, E-File Doc. 30.
[4] Additionally, this Motion for Fees and Costs, itself, is substantially similar to the Motion for
Fees and Costs filed in *Bloom*, Docket No. 5:16-cv-121, E-File Doc. 53 (Mar. 1, 2018).

*Dismiss*, E-File Doc. 14, at 2-3 (Feb. 17, 2016). Accordingly, Parrish Law Offices should not be entitled to reimbursement for fees it incurred in the LCD challenge.[5]

The attorney fees requested here are clearly unreasonable and, in the unlikely event that this Court grants Plaintiff's EAJA fees motion, Plaintiff requests that the Court scrutinize the amount requested and reduce it appropriately.

## III.  **CONCLUSION**

The Secretary's position throughout the administrative proceedings and before this Court has been substantially justified and the Secretary has had no improper purpose in pursing this litigation. Accordingly, the Secretary requests that the Court deny Plaintiff's EAJA fee petition.[6]

Respectfully submitted,

ANDREW LELLING
UNITED STATES ATTORNEY

*/s/ Anita Johnson*
ANITA JOHNSON BBO No. 565540
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210

---

[5] Parrish Law Offices did not identify the fees related to the LCD challenge with a different matter number; therefore, it is difficult to determine the amount that is being claimed for the LCD challenge. Pl. Mot. for Fees & Costs, Ex. B. The Secretary notes that a conservative estimate of the fees is $19,982.50. *Id*. at 8-11, 13-14, 16-22, 24, 26-28, 31, 37, 40. The Secretary notes that this figure does not include fees for services where both the district court litigation and the LCD challenge were listed in the same line item or services where it was altogether unclear whether the work was completed for this litigation or the LCD challenge. *Id*. at 8 (it is likely that the work related to the interrogatories was related to the LCD challenge, since no interrogatories were filed here), 27-28. The Secretary points out that Parrish Law Offices attributed some of the costs related to the LCD challenge to the costs in this litigation. *Id*. at 13 (charging FedEx fees for the LCD litigation). The Secretary requests that, in the unlikely event that EAJA fees are imposed here, that the claimed fees and costs be reduced accordingly.

[6] In the unlikely event that the Court concludes that the Secretary lacks substantial justification for his position and that an award of fees and/or costs is appropriate, the Secretary requests that the Court examine the fees requested and award only reasonable fees.

617-748-3266
anita.johnson@usdoj.gov

Of Counsel:

ROBERT P. CHARROW, Acting General Counsel

JAN B. BROWN, Acting Chief Counsel, Region I

JENNIFER WILLIAMS, Assistant Regional Counsel
Office of the General Counsel, Region 1
Department of Health and Human Services

<u>Certificate of Service</u>

I certify that the foregoing will be filed through the electronic filing system of the Court, which system will serve counsel for Plaintiff electronically, on this 23rd day of May 2018.

*/s/  Anita Johnson*
Anita Johnson
Assistant U.S. Attorney