UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

CAROL LEWIS,

                Plaintiff,

v.                                                Case 1:15-cv-13530-NMG

ALEX AZAR,
Secretary of the U.S. Department of Health
and Social Services,

                Defendant.

---

**MS. LEWIS' REPLY RE: MOTION FOR FEES AND COSTS**
**LEAVE TO FILE GRANTED BY ORDER OF COURT JUNE 5, 2018**

---

Ms. Lewis• motion for fees should be granted.

Before turning to the Secretary's substantive claims, Ms. Lewis notes that she is learning of many of the defenses and what is actually disputed for the first time in the Opposition brief because the Secretary refused to meet and confer in accordance with the Local Rules.[1]  For example, in the Opposition brief, Ms. Lewis learns for the first time that:

    1) the Secretary contends that fees for the LCD action are not compensable and that the Secretary would prefer the fees related thereto be broken out (Opp. at 13-14);

    2) the Secretary contends that the fees themselves are "unreasonable" (Opp. at 12-14);

    3) the Secretary does not dispute a COLA adjustment (Opp. at 10);

    4) the Secretary does not contest that Ms. Lewis is eligible to receive an EAJA award; and

    5) the Secretary does not assert that there are "special circumstances" that make a fee award unjust.

---

[1] Because Ms. Lewis only learned of the real areas of disagreement in the Opposition paper, her opening papers were not able to focus on them and this Reply is necessarily longer than it otherwise would have been.

These are all the kinds of things that should have been addressed in a meet and confer and, apparently, it is undisputed that the Secretary refused to meet and confer in accordance with the Local Rules, *again*.

Substantively, the Secretary did not carry his burden of making a "strong showing" that his position had "a reasonable basis both in law and fact." *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Secretary's claim that the court in *Whitcomb v. Burwell*, 2015 WL 5254518 (E.D. Wisc.) (Duffin, J.) "agreed" that "the Secretary was substantially justified in his position" that a CGM is not primarily and customarily used for a medical purpose (Opp. at 4) is flatly incorrect. *Inter alia*, the Secretary did not meet his burden to explain away the "string of losses" he has suffered before three district courts, in more than 55 negative ALJ decisions, and his own Civil Remedies Division. Fundamentally, the Secretary's position that a CGM is not "primarily and customarily used for a medical purpose" was and is non-sensical. *See Finigan v. Burwell*, 189 F.Supp.3d 201, 207 n. 6 ("… head-scratching …") (D. Mass 2016).

With regard to the amount of fees, the Secretary's general claim that the fees are "unreasonable" is not well founded. All of the fees in this case were the result of the Secretary's unreasonable refusal to follow the laws enacted by Congress. Further, specific categories of fees were the direct result of the Secretary's baseless contention that this case was moot and the resulting motion practice and delay as a result thereof.

## DISCUSSION

I. **The Secretary Did Not Meet His Burden To Make a "Strong Showing" That His Position Was "Substantially Justified"**

A. 28 U.S.C. § 2412(d)(1)(A)) Fees

1. *Whitcomb v. Burwell*

On page 4, the Secretary contends that the court in *Whitcomb v. Burwell*, 2015 WL 5254518 (Sept. 9, 2015) (E.D. Wisc.) (Duffin, J.) "agreed" that "the Secretary was substantially justified in his position that the CGM's did not qualify as DME[.]" Opp. at 4. That is simply not correct. In the *Burwell* case, the Secretary treated a Local Coverage Article (LCA) as a Local Coverage Determination (LCD). Based on the Article's description of a CGM as "precautionary", the Secretary denied CGM coverage on the grounds that a CGM was not primarily and customarily used for a medical purpose. On review, the district court determined that reliance on the Article/treatment of the Article as an LCD was erroneous and remanded the matter to the Secretary to consider coverage under the proper legal standard.[2] *Whitcomb v. Burwell*, 2015 WL 3397697 (May 26, 2015) (E.D. Wisc.) (Duffin, J.) at *3-4. On Ms. Whitcomb's motion for fees under EAJA, the court held that: "it was not unreasonable to argue the clear language in a related Article ought to be used to fill in the gap and assist in the coverage determination." 2015 WL 5254518 at *2. Thus, rather than "agreeing" that the Secretary's position with respect to "precautionary" was substantially justified, the *Burwell* court merely held that reliance on the Article, though erroneous, was substantially justified *at that time*.

On remand, the Secretary again rejected Ms. Whitcomb's claim for coverage on the grounds that a CGM is not DME because it is not "primarily and customarily used for a medical purpose" because it is "precautionary" (not relying on the Article this time). Ms. Whitcomb again sought

---

[2] That is, the *Burwell* case litigated the same issue as Ms. Lewis' LCD challenge. In both cases, it was determined that the Secretary's reliance on/treatment of the Article as an LCD was improper.

3

review in *Whitcomb v. Hargan*, 17-cv-14 (E.D. Wisc. Oct. 26, 2017) (Jones, J.). There, the Court found that the Secretary's position that a CGM is not "primarily and customarily used for a medical purpose" was "arbitrary and capricious" and "unreasonable." *Id.* at 13-15. Those findings compel a conclusion that the Secretary's position was not substantially justified because "substantial justification" requires a reasonable factual basis, a reasonable legal basis, and a reasonable connection between the two. *See U.S. v. Hallmark Const. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000) (reasonable factual basis, reasonable basis in law, reasonable connection between the two). Ms. Whitcomb's motion for fees under EAJA is currently before the Wisconsin District Court.

In addition, the Secretary cites to the *Burwell* case when contending: "Ab inito, prior administrative law decisions are not precedential and should not be relied upon to determine whether the Secretary's position is substantially justified." Opp. at 4-5. That position is wholly without merit. First, the court in *Burwell* said no such thing. What the court in *Burwell* did say was that it did not find that the two non-precedential decisions from ALJs that were before it "suggest that the Secretary's position was not substantially justified." 2015 WL 5254518 at *3. Of course, that is far different from the proposition offered by the Secretary.

Second, as noted by the Supreme Court:

Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified yet lose. Nevertheless, a string of losses can be indicative; even more so a string of successes.

*Pierce*, 487 U.S. at 566.  Of course, the Supreme Court did not indicate that only "precedential" decisions can form the "string of losses."  A loss, whether precedential or not, is one indicator that the position is not substantially justified.[3]

Third, in 2015 when the *Burwell* court rendered its decision on a somewhat different question, it did so with only two ALJ decisions before it.  Since that time, three district courts, more than 40 ALJs, and the Secretary's own Civil Remedies Division have weighed in against the Secretary's claim.  Thus, rather than the "one other court" referred to in *Pierce*, more than 40 courts have now ruled against the Secretary.  This is the definition of a "string of losses."

### 2. Civil Remedies Division Decision

The Secretary's claim that citation to the ruling of his own Civil Remedies Division is "misleading" (Opp. at 5) because the decision was later vacated is likewise without merit.  The Secretary contended that the Article should be treated as an LCD.  Ms. Lewis contested that claim but, accepting the Secretary's assertion, challenged the Article and its exclusion of CGM's as "precautionary" using the LCD challenge procedure.  The Civil Remedies Division agreed with Ms. Lewis that exclusion of CGM's as "precautionary" did not meet the "reasonableness standard."  DAB No. CR4596, 2016 WL 2851236 at *14, *18.  Thereafter, the Council vacated the decision on the grounds that the Article was not an LCD (contrary to the Secretary's previous contention) and that, therefore, the LCD challenge procedure should not have been used.  DAB No. 2782, 2017 WL 1838026 at *12.  Thus, Ms. Lewis' description of the findings of the Civil Remedies Division was proper and correct in every respect.

---

[3] ALJ decisions are supposed to be non-precedential to allow an ALJ flexibility to address the needs/facts of an individual case without affecting other cases.  Here, however, the ALJ decisions are not based on case specific facts but instead address the Secretary's blanket policy excluding CGM coverage as "precautionary."

### 3. The Secretary's Reply/Motion to Dismiss

The Secretary contends: "It was not until after [the order dismissing this case] that Plaintiff made clear in her Motion to Alter or Amend Judgment that she was seeking payment for past claims, resulting in the Court's reversal of the dismissal." Opp. at 7. That statement is belied by common sense, the Complaint, and the Secretary's own opposition to Ms. Lewis• Motion to Alter or Amend. Of course, it is elemental that judicial review of administrative decisions must be based on the Record before the department, which is necessarily backward looking. *See* 42 U.S.C. § 405(g) ("… upon the pleadings and transcript of the record …"). Indeed, the amount-in-controversy requirement necessary for federal court jurisdiction challenging the Secretary's denials necessitates that the Complaint must seek relief going backward. *See* 42 U.S.C. § 1395ff(b)(1)(E). Further, as relief, the Complaint itself sought, *inter alia*: "An order that the Court will retain jurisdiction over the decisions at issue until the Secretary's payment of the *claims at issue* has been completed." Complaint at 20 (emphasis added). Even after Ms. Lewis moved to alter or amend the judgment, the Secretary continued to oppose, even going so far as to file a sur-reply. *See* Dkt. #71. The Secretary should not be heard to allege that he was confused about what was sought. Instead, the Secretary simply advanced a baseless position and, having momentarily succeeded in misleading the Court, sought to defend that baseless position. To its credit, this Court ultimately saw through that and the Secretary did not meet his burden of showing that his position was substantially justified.

Moreover, even if it were true that the Secretary was initially confused by the pleadings and did not understand that Ms. Lewis was seeking payment for the denied claims, that is exactly the kind of thing that could have been cleared up in a meet and confer either before the Secretary filed his reply/Motion to Dismiss or before Ms. Lewis was forced to file a fully briefed - *and opposed* - Motion to Alter or Amend. Thus, even crediting the Secretary's alleged confusion, the

Secretary's failure and refusal to comply with his meet and confer requirements was, again, without substantial justification and is further support for an EAJA award.

As Ms. Lewis showed in her opening papers, no doctor, study, professional organization, industry party/group or competent authority of any kind has ever opined that a CGM is not primarily and customarily used for a medical purpose. Mot. at 11. In response, the Secretary asserts that the Record includes evidence that a CGM should be used with finger sticks for calibration/confirmation. Opp. at 6. So what? The legal standard is whether a CGM is "primarily and customarily used for a medical purpose" - not whether a CGM is or is not used with other items.

The Secretary did not carry his burden of making a "strong showing" that his initial denial of Ms. Lewis' claims or conduct in this litigation itself was substantially justified, and that EAJA fees should not be awarded as a result. Nearly 60 negative decisions from reviewing courts are the definition of the "string of losses" referred to by the Supreme Court. Finally, the very idea that a CGM is not "primarily and customarily used for a medical purpose" is indefensible.

**B.    28 U.S.C. § 2412(b) Fees**

As noted in Ms. Lewis' opening papers, the Secretary's denial of Ms. Lewis• CGM claims and motion to dismiss lacked any legal or factual support. That is why three district courts, more than 40 ALJs, and the Secretary's own Civil Remedies Division have ruled against the Secretary. No rational person could conclude that a CGM is not "primarily and customarily used for a medical purpose." With regard to "wanton", "vexatious" conduct and conduct "delaying and disrupting the litigation", the Secretary did not respond. Putting aside the baselessness of the underlying position, clearly, a baseless motion to dismiss that results in a six-month delay and increased expense on the opposing party meets that definition.

The Secretary did not contest that his representative (Ms. Johnson) failed and refused to comply with the Local Rules requiring meet and confers, *even on this motion for fees*. In any event, with respect to the motion to alter or amend, contesting that fact would have been futile because the email traffic is an exhibit to these papers. Mot. (Exhibit 6). Thus, the Secretary's denial of improper purpose of harassment and delay are unavailing. Opp. at 8-9.

Faced with a clear statutory mandate to provide coverage for items that are "primarily and customarily used for a medical purpose", multiple district court decisions, numerous ALJ decisions, and the decision of his own Civil Remedies Division, the Secretary forced Ms. Lewis to sue to "vindicate plain legal rights." *Gray Panthers Project Fund v. Thompson*, 304 F.Supp.2d 36, 39 (D.D.C. 2004). That is the definition of "bad faith" and fees should be awarded under Paragraph (b).

## II. The Amount of Fees

### A. Updated Fee Calculations

Of course, fees for preparing an EAJA motion are also compensable. *Commissioner of INS v. Jean*, 496 U.S. 154, 163-65 (1990). Updated fee calculations to reflect briefing on this issue are listed below and a revised Exhibit 3 with the billing detail is attached:

**Fees Using Usual and Customary Rates:**

| Firm | Hours | Fees | Expenses | Total |
|---|---|---|---|---|
| Burke & Associates (Laurie Bejoian) | 79.00 | $27,650.00 | $626.15 | $28,276.15 |
| Parrish Law Offices (Debra Parrish, James Pistorino, Bridgette Noonan) | 409.62 | $177,063.00 | $1,761.60 | $178,824.80 |
| Total | 488.62 | $204,713.00 | $2,387.75 | $207,100.75 |

**COLA Adjusted Fees**

| Firm | Hours | Fees | Expenses | Total |
|---|---|---|---|---|
| Burke & Associates (Laurie Bejoian) | 79.00 | $15,760.50 | $626.15 | $16,386.65 |
| Parrish Law Offices (Debra Parrish, James Pistorino, Bridgette Noonan) | 409.62 | $82,948.00 | $1,761.60 | $84,709.60 |
| Total | 488.62 | $98,708.50 | $2,387.75 | $101,096.25 |

**Parrish Fees Using Usual and Customary Rates/Local Counsel COLA Rates**

| Firm | Hours | Fees | Expenses | Total |
|---|---|---|---|---|
| Burke & Associates (Laurie Bejoian) | 79.00 | $15,760.50 | $626.15 | $16,386.65 |
| Parrish Law Offices (Debra Parrish, James Pistorino, Bridgette Noonan) | 409.62 | $177,063.00 | $1,761.60 | $178,824.60 |
| Total | 488.62 | $192,823.50 | $2,387.75 | $195,211.25 |

**B.      28 U.S.C. § 2412(d)(1)(A)) Fees**

It is difficult to follow the Secretary's claims about why a fee enhancement should not be applied to Paragraph (d) fees. Opp.at 12. On the one hand, the Secretary contends that the fees should be reduced because the Parrish firm has specialized knowledge and background in CGM cases and, therefore, (in the Secretary's view) should have been more efficient. Opp. at 13. On the other hand, the Secretary contends that no specialized knowledge or background was necessary. Opp. at 12. Those are mutually exclusive positions.

In any event, it appears to be undisputed that HHS' ALJ decisions are not generally publicly available and it is only because of the Parrish firm's specialized knowledge that the evidence of the numerous ALJ decisions was available. That is specialized knowledge of the Parrish firm generally,

9

not individual lawyers associated with the firm. Fees should be awarded using the Parrish firm's usual and customary rates.

Of course, Paragraph (b) fees are not subject to this analysis.

### C. Fees Generally

On page 12, the Secretary contends that the fees requested are "unreasonable" on the grounds that: 1) the Parrish firm drew heavily on pleadings from other CGM cases; and 2) fees for the "unrelated" LCD challenge are requested. Further, the Secretary contends that "Plaintiff is requesting as much as seven times more than the amount she requested in the similar cases[.]" Opp. at 12.

As an initial matter, what fees have been requested in other cases is irrelevant to whether the fees in this case are reasonable. Those cases may have been more difficult or easier legally and/or factually and simply have no bearing on whether the fees requested in this case are reasonable.

At a high level, putting aside the fees related to the motion to alter/amend (~$39,969) and the LCD\LCA challenge ($50,902.98), the fees requested in this case are actually less than the fees requested in the *Bloom* case. In *Bloom*, the total fees sought are ~$128,000. *Bloom v. Azar*, 5:16-cv-121 (D. Vt.), Dkt. # 53. Here, subtracting the motion to alter/amend fees and the LCD fees, the total fees sought are ~$113,000. That the Parrish firm was able to utilize research and materials from other cases in this case is both a demonstration of the Parrish firm's specialized knowledge and one reason why the fees in this case were lower than they otherwise would have been.[4]

---

[4] The Secretary's claims about other cases are confused. In *Whitcomb v. Burwell*, Ms. Whitcomb handled matters *pro se* through and including the filing of the Complaint in federal court. At that point, Ms. Whitcomb retained counsel to handle motion practice who ultimately sought ~$32,000 in fees. In *Whitcomb v. Hargan*, (the follow on to the remand of the *Burwell* case) the requested fees are ~$61,000 for a combined total of $93,000. Thus, while those cases are not directly comparable to this case, the fees are in the same range for the same work.

With regard to the successful motion to alter or amend, the ~$40,000 in related fees represents more than 76 hours researching and drafting 24 pages of briefing and reviewing another 14 pages of opposition briefing. Those fees are reasonable, certainly less than would have been incurred if an appeal were necessary, and resulted in the "extraordinary" relief of withdrawing the prior judgment and granting Ms. Lewis• requested relief in its entirety. *See* Dkt. #77 at 3, 9. Those fees were the direct result of the Secretary's baseless motion to dismiss, failure and refusal to meet and confer, and opposition to the motion to alter/amend.

With regard to LCD fees, those fees are directly related to this action. As noted above, the Secretary previously contended that the Article should be treated as an LCD and relied on that as a ground for defense of his position. In order to foreclose the Secretary making that claim in this case, starting in December 2014, Ms. Lewis litigated the LCD\LCA issue and was ultimately victorious both in obtaining a decision that the "precautionary" defense did not meet the "reasonableness standard" and getting the DAB to hold that the Article is not an LCD.[5] That eliminated those issues for this case.

Indeed, the Secretary's claim that the LCD matter and this matter are "unrelated" (Opp. at 12) is belied by the Secretary's own motion to dismiss this case wherein the Secretary contended that the LCD\LCA challenge process had to complete before this case could be filed. *See* Dkt. #13, 20. Though separate proceedings, the matters are related and the result in the LCD challenge is part of the proceedings below that affected the litigation in district court.

---

[5] This is essentially the same issue litigated in the *Whitcomb v. Burwell* case. However, that decision did not issue until May 2015. In any event, the Secretary has demonstrated a pattern of simply ignoring district court decisions that it finds inconvenient. Thus, both from a timing and direct applicability perspective, the issue needed to be litigated with respect to Ms. Lewis specifically.

As to the fees for the LCD challenge, those fees total ~$50,000. Those fees represent more than 134 hours, researching and drafting well over 50 pages of briefing corresponding to at least eight filings at both the ALJ and appellate level, including the prehearing identification of expert witnesses that were prepared for potential testimony, and the consistent effort of Ms. Lewis to notify the ALJ of supplemental authority that issued during the pendency of the challenge. In addition, in an unusual development, the ALJ allowed and ordered discovery of the Department, necessitating the creation of interrogatories and a request for the production of documents - which discovery the Department failed to comply with. The LCD fees were both reasonable and a compensable in this matter.

### D. Deterrence

As Ms. Lewis noted in her opening papers, one purpose of an EAJA award is to prospectively deter unreasonable government action. *See Berman v. Schweiker*, 713 F.2d 1290, 1298 (7th Cir. 1983). Prior to this Court's decision, the rulings of two other district courts (one finding the Secretary's position "arbitrary and capricious"), 55 ALJ decisions, and the Secretary's own Civil Remedies Division had concluded that the Secretary's position was not well founded. None of that deterred the Secretary.

Incredibly, even after all of this, with knowledge of the negative district court decisions, the Secretary continues to issue decisions contending that a CGM is not "primarily and customarily used for a medical purpose." *See In re: N.S.*, M-17-8596 (May 11, 2018) (Exhibit #7 at 2) and *In re: J.B.*, M-18-1749 (May 18, 2018) (Exhibit #8 at 10).

Thus, this is the unique case where the Court knows that the sheer fact of negative decisions (no matter how numerous) will not deter the Secretary. Accordingly, only an EAJA award has any prospect of deterring the Secretary from continuing to advance this unreasonable position.

### III. CONCLUSION

An EAJA award is appropriate in this case.

Dated: June 5, 2018                                    Respectfully submitted,

                                        CAROL LEWIS, By her attorneys,
*/s/ Laurie J. Bejoian*
LAURIE J. BEJOIAN BBO No. 545312
325B Great Road
Littleton, MA 01460
978-486-9145
ljblaw.ljbejoian@gmail.com

OF COUNSEL
DEBRA M. PARRISH
PARRISH LAW OFFICES
788 Washington Road
Pittsburgh, PA 15228
412-561-6250
debbie@dparrishlaw.com

<u>Certificate of Service</u>

I certify that the foregoing will be filed through the electronic filing system of the Court, which system will serve counsel for Defendant electronically, on this the 5th day of June 2018.

*/s/ Laurie J. Bejoian*
LAURIE J. BEJOIAN BBO No. 545312
325B Great Road
Littleton, MA 01460
978-486-9145
ljblaw.ljbejoian@gmail.com