**United States District Court**
**District of Massachusetts**

|  |  |
|---|---|
| Carol Lewis, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|       v. | ) |
| | )   **Civil Action No.** |
| Secretary of Health and Human | )   **15-13530-NMG** |
| Services, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a dispute over attorneys' fees and costs incurred pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA") following this Court's order allowing the motion for summary judgment of Carol Lewis ("Lewis" or "plaintiff").

## I.   Background

Carol Lewis suffers from Type I diabetes and hypoglycemia and hyperglycemic unawareness.  As a result, her doctor prescribed a continuous glucose monitor ("CGM").  In March, 2013, Lewis submitted five CGM device claims to the National Health Insurance Corporation ("the NHIC") for a total of $2,482. Those claims were denied and plaintiff appealed to the Medicare Appeals Council ("MAC") in March, 2014.  The MAC also denied her

claims, finding that because the CGM was "precautionary" and did not "serve a medical purpose", it was not covered under the Durable Medical Equipment ("DME") Medicare benefit.

After the MAC denial, plaintiff filed parallel appeals relating to her CGM claim for Medicare coverage.  In October, 2015, she brought suit against the Secretary of Health and Human Services ("the Secretary" or "defendant") in federal court and this Court dismissed her claim as moot in August, 2017.  Upon reconsideration, however, this Court allowed plaintiff's motion for summary judgment in April, 2018, on the grounds that the Secretary's denial of CGM coverage constituted legal error and was not supported by substantial evidence.

At the same time, plaintiff appealed the MAC decision to the Departmental Appeals Board, Civil Remedies Division ("CRD"), in December, 2015.  In April, 2016, the CRD reversed the MAC decision on the grounds that NHIC's reliance on two informal determinations, the Local Coverage Determination ("LCD") and the Local Coverage Article ("LCA"), was unreasonable ("the LCD challenge").  That decision was then vacated by the Departmental Appeals Board, Appellate Division, one year later.

Pending before the Court is plaintiff's motion for attorneys' fees and costs incurred during this litigation.

## II.  Analysis

Lewis has filed three motions: a motion for costs, a motion for fees and a motion to strike.  The motion to strike relates to the Secretary's sur-reply.  The Court will address the motion to strike before moving on to the underlying analysis of the fees and costs claimed.

### A. Plaintiff's motion to strike defendant's sur-reply

Plaintiff moves to strike the Secretary's sur-reply on the grounds that counsel 1) did not meet and confer in good faith to the narrow issues in this litigation and 2) failed to identify new arguments by plaintiff in his sur-reply.[1]  The Secretary responds that 1) Local Rule 7.1 does not require a conference with respect to the substance of every memorandum and 2) plaintiff has provided no authority for her motion to strike.

The Court agrees with plaintiff that the Secretary had ample opportunity to contest fees because they were disclosed in great detail, including the fees related to the LCD challenge. In fact, it does not appear that any of the Secretary's sur-reply responses arises out of "new" information discovered since plaintiff's reply.  Nevertheless, notwithstanding the tenuous grounds on which defendant submits her sur-reply, motions to strike pursuant to Fed. R. Civ. P. 12(f) are limited to

---

[1] Since the filing of this case, Alex Azar has succeeded Sylvia Burwell as Secretary of Health and Human Services.

pleadings identified in Fed. R. Civ. P. 7(a).  Because this sur-reply does not qualify as a pleading under Rule 12(f), plaintiff's motion to strike will be denied and the Court will consider it with respect to the underlying motion for fees. Plaintiff will not be entitled to fees relating to the motion to strike.

**B. EAJA Fees**

In the United States, each party is generally required to bear its own attorneys' fees. <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 602 (2001).  The Equal Access to Justice Act ("the EAJA"), 28 U.S.C. § 2412, is an exception to that rule in that it provides for attorneys' fees and expenses under §§ 2412(b) and (d).  In allowing for the reimbursement of fees, the EAJA serves two broad functions: 1) to ensure that individuals are not deterred from challenging unjustified government action and 2) to deter "unreasonable exercise of Government authority". <u>Ardestani</u> v. <u>I.N.S.</u>, 502 U.S. 129, 138 (1991).

**1. Section 2412(d)**

Plaintiff seeks to recover fees and expenses pursuant to Section 2412(d), which provides that

> a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency

action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

To seek attorneys' fees pursuant to 28 U.S.C § 2412(d), the claimant must establish that 1) she is the prevailing party in the civil action, 2) the petition was timely filed, 3) the government's position was not substantially justified and 4) no special circumstances make an award against the government unjust. Castaneda-Castillo v. Holder, 723 F.3d 48, 57 (1st Cir. 2013).  Assuming that an award is proper, § 2412(d) caps fees to $125 per hour but allows for rate enhancements if the court

determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A).

The parties do not dispute that Lewis is the prevailing party or that the petition for fees was timely filed.  The Secretary does dispute, however, substantial justification, rate enhancements and reasonableness, all of which the Court now addresses.

### a. Substantially Justified

The Secretary bears the burden of establishing that his position during the litigation and the agency proceedings was "substantially justified" by a preponderance of the evidence.

- 5 -

Castaneda-Castillo, 723 F.3d at 73.  Substantially justified
means "justified to a degree that could satisfy a reasonable
person", which is no different than having a "reasonable basis
both in law and fact". Pierce v. Underwood, 487 U.S. 552, 565
(1988).  The term requires more than "merely undeserving of
sanctions for frivolousness". Id. at 566.

Lewis argues that the Secretary's position was not
substantially justified because 1) 55 Administrative Law Judges
("ALJs") had previously determined that CGM was covered under
DME, 2) the Civil Remedies Division of HHS held that the denial
of CGM coverage failed the reasonableness standard, 3) no
professional in the healthcare industry was of the opinion that
CGM is not "primarily and customarily used for medical purpose",
4) the Secretary was late in issuing the MAC decision by 460
days, 5) the Secretary moved for improper dismissal under CMS
Ruling 1682R and 6) counsel refused to meet and confer pursuant
to Local Rule 7.1 during this litigation.

The Secretary responds that 1) plaintiff's CGM did not
primarily or customarily serve the medical purpose of
controlling her disability and 2) decisions by an ALJ are not
precedential and even among such tribunals, coverage for CGMs
remains largely an unsettled issue.  He further points to the
administrative record in this case wherein plaintiff's own
physician noted that she must consult with her traditional

- 6 -

fingerstick testing before adjusting her insulin pump dosage. Finally, he contends that dismissal for lack of standing was justified because plaintiff's complaint sought declaratory relief and it was not clear that she was seeking payment for past claims.

To the extent that the Secretary continues to argue that the fingerstick method precludes a finding that CGMs serve a medical purpose, the Court reiterates its order at summary judgment:

> The fact that fingersticks may be used to confirm the results of a CGM does not deprive a CGM of its "primarily medical" character.  First, Medicare frequently covers confirmatory testing.  Second, the FDA recognizes that a CGM may be a diabetic's sole means of monitoring glucose levels.  The Secretary's assertion that a device loses its medical nature if it is used in conjunction with another medical device is contrary to law.

The fact that the Secretary was ultimately the losing party, does not, in itself, warrant the award of fees because it is possible that the government can "take a position that is substantially justified, yet lose". Pierce, 487 U.S. at 569. Since 2015, however, three district courts and more than 40 ALJs have disagreed with the Secretary's position that CGMs do not qualify as DME.  Thus, the Court concludes that the breadth of decisions contrary to the Secretary's position demonstrates a "string of losses" that connotes a lack of substantial justification. Id.

Moreover, in citing the exceptional ALJ decisions that support the Secretary's position, his claim that ALJ decisions are not precedential is disingenuous.  The Court further notes that the ALJ decisions that have affirmed the Secretary's position predate 2015, while more recent decisions have recognized the trend that CGMs are DME.  See Bloom v. Azar, No. 5:16-CV-121, 2018 WL 583111, at *11 (D. Vt. Jan. 29, 2018) (finding the CGM to be an essential part of the patient's diabetes management and thus the MAC erred in denying Medicare coverage); Whitcomb v. Hargan, 2017 U.S. Dist. LEXIS 216571, at *17-18 (the decision not to cover CGMs, which arguably do serve a primary medical purpose, is arbitrary and capricious).

Thus, while the Secretary's position may have been substantially justified at the ALJ stage of this litigation, since then, the Secretary has been put on notice that his position is tenuous at best. See Whitcomb v. Burwell, 2015 U.S. Dist. LEXIS 67802 (E.D. Wis. May 26, 2015) (finding that the denial of CGM coverage was an error of law); Hargan, 2017 U.S. Dist. LEXIS 216571, at *18 (finding that while an ALJ decision may not be precedential as to whether a CGM is reasonable to a particular enrollee, the "threshold question of whether [CGMs] satisfy the regulatory definition of durable medical equipment should not vary from enrollee to enrollee").  Thus, plaintiff is entitled to reimbursement of fees pursuant to § 2412(d).

### b. Rate Enhancement

Because the Secretary does not oppose plaintiff's cost of living adjustment ("COLA") request if fees are awarded, the Court adopts plaintiff's COLA multiplier of 1.62, which raises the statutory billing rate to $202.50 per hour.  The Court declines, however, to award an enhancement pursuant to a "special factor" for the following reasons.

The "special factor" enhancement generally relates to the limited availability of qualified attorneys for the proceedings involved. Castaneda-Castillo, 723 F.3d at 74.  This requires the attorney to have some "distinctive knowledge or specialized skill needful for the litigation in question". Pierce, 487 U.S. at 572.  This special factor is distinct from the

> extraordinary level of the general lawyerly knowledge and ability useful in all litigation.

Id.

Plaintiff argues that Attorney Parrish (lead counsel) possesses a technical and scientific background and detailed knowledge of the Medicare appeals process, both of which were required to represent Lewis competently.  While Attorney Parrish's prior experience certainly renders her competent, her purported expertise was not "essential for competent representation". Atl. Fish Spotters Ass'n v. Daley, 205 F.3d 488, 492 (1st Cir. 2000).

Here, the central legal issue revolved around coverage under the DME Medicare benefit and, while the factors and procedures surrounding such a claim may be complicated, the Supreme Court has recognized that a district court cannot rely on the novelty and difficulty of the issues, the work and ability of counsel or customary awards in other cases (among other factors) when determining whether a special factor enhancement applies. <u>Pierce</u>, 487 U.S. at 573.  In fact, the First Circuit has held that administrative law suits, like this one, involve

> a tangle of discrete regulations, various precedents . . . [b]ut in most cases an otherwise competent lawyer can . . . learn enough about the particular controversy to litigate in the area adequately.

<u>Atl. Fish Spotters Ass'n</u>, 205 F.3d at 492.

Thus, while counsel competently represented her client throughout this litigation, plaintiff has not demonstrated that counsel has met her burden for entitlement to a special factor enhancement.

### c. Reasonableness

The Secretary argues that plaintiff's request for fees is significantly higher than the fees requested in similar cases and that she is seeking fees for an unrelated LCD challenge. Lewis replies that, putting aside the fees incurred in connection with the motion to alter and the LCD challenge, the

remaining fees are less than those fees requested in similar
cases.  Furthermore, while the LCD challenge occurred in an
administrative proceeding not before this Court, plaintiff
argues that the issues of the LCD challenge and the DME
determination are intertwined and had she not been successful in
the administrative proceeding, the LCD challenge would have been
an issue before this Court.  The Secretary rejoins that
plaintiff is only entitled to approximately $32,000 in fees
which is a reduction in the award requested because counsel
allegedly overbilled for fees incurred with respect to 1)
unrelated administrative proceedings and 2) filings that were
substantially similar to those made in other cases.

The Court will reduce the § 2421(d) award by $52,245 (258
hours at $202.50 per hour) because, while the Civil Remedies
Division found for plaintiff with respect to her LCD challenge,
that decision was vacated by the appellate court.[2]  Thus,
plaintiff was not the prevailing party with respect to the LCD
challenge and she did not appeal that decision to this Court.
Had plaintiff appealed the final decision from the agency
proceeding, she may have been entitled to the LCD related fees
if she prevailed. Cf. Castaneda-Castillo, 723 F.3d at 72

---

[2] That award is commensurate with plaintiff's estimate that
approximately $50,000 was billed for unrelated administrative
proceedings.

(finding that a court must have jurisdiction over the underlying action to award fees under the EAJA).  Finally, the Court will not credit the Secretary's challenge for fees allegedly incurred for substantially similar filings because the Court finds such time spent (approximately 70 hours) to be reasonable.

Accordingly, plaintiff's counsel will be awarded $49,477 in costs and fees pursuant to § 2412(d), based on the COLA award ($101,096) less the reduction calculated by the Court ($52,245) plus the bill of costs ($626).

### C. Section 2412(b)

Lewis also moves for fees pursuant to 28 U.S.C. § 2412(b). To prevail under that section, she must prove that the losing party's claim was 1) meritless and 2) brought for improper purposes such as harassment or delay. Kerin v. U.S. Postal Serv., 218 F.3d 185, 190 (2d Cir. 2000) (internal quotations and citations omitted).  The latter inquiry requires a showing that the losing party acted in "bad faith, vexatiously, wantonly, or for oppressive reasons". Id.

Both parties reiterate their arguments on substantial justification to defend (or attack) the merits of the Secretary's position.  The Court declines to address whether the "substantial justification" and "meritless" standards converge but instead finds that plaintiff has not satisfied the second inquiry of "improper purposes".

- 12 -

The Court is disconcerted by 1) allegations that counsel on behalf of the Secretary refused to meet and confer with plaintiff's counsel to narrow issues throughout the litigation and 2) the inference that the Secretary raised the issue of mootness (which was later overruled by this Court on a motion to reconsider) when plaintiff clearly sought reimbursement for prior denials of coverage. Nevertheless, the standard of bad faith is a high burden and plaintiff has not demonstrated that the Secretary's actions were so exceptional as to warrant an award of fees under § 2412(b). See Cordeco Dev. Corp. v. Santiago Vasquez, 539 F.2d 256, 263 (1st Cir. 1976) (finding that such an award can only occur "in extraordinary circumstances and for dominating reasons of justice").

Plaintiff's contention that the Secretary's conduct was on par with the conduct alleged in Gray Panthers Project Fund v. Thompson, 304 F. Supp. 2d 36 (D.D.C. 2004) is over-wrought. In that case, the district court found bad faith because, contrary to a mandatory congressional directive, the Secretary failed to mail plan information to eligible Medicare beneficiaries. Id. at 40-41. Although the Secretary is required to cover devices that are "primarily and customarily used for a medical purpose", that action requires the Secretary to make a determination as to coverage eligibility. The decision-making process is one step removed from the actions in Gray Panthers where there was clear

- 13 -

and convincing evidence that the Secretary violated an unambiguous congressional mandate by failing to mail out required information. Id. at 39.

Thus, because plaintiff has failed to demonstrate that the government acted with "improper purpose", the Court declines to award attorneys' fees pursuant to § 2412(b).

This finding does not absolve counsel of their obstructive conduct throughout this protracted and unnecessarily expensive litigation.  This suit began as a claim for reimbursement of $2,800 for a medical device to be used by a diabetes patient and unconscionably escalated into a claim for over $200,000 in attorneys' fees and costs.  Had counsel met and conferred early on in an attempt to narrow the issues, these exorbitant fees and costs could have been avoided.

### ORDER

For the foregoing reasons, plaintiff's motion for costs (Docket No. 79) is **ALLOWED** and counsel is awarded $626. Plaintiff's motion for attorneys' fees (Docket No. 80) is **ALLOWED**, in part, and **DENIED**, in part, and counsel is awarded $48,851.  Her motion to strike (Docket No. 100) is **DENIED**.

**So ordered.**

_/s/Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated March 30, 2019